In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 16-1338 & 16-2242

PETAR B. YUSEV and KATERINA G. YUSEVA,

*Petitioners*,

*v.*

JEFF SESSIONS, Attorney General of the United States,

*Respondent*.

Petitions for Review of Orders of the
Board of Immigration Appeals.
Nos. A089-070-635 & A089-070-636.

ARGUED FEBRUARY 21, 2017 — DECIDED MARCH 23, 2017

Before WOOD, *Chief Judge*, and FLAUM and ROVNER, *Circuit Judges*.

WOOD, *Chief Judge*. Petar Yusev and his wife, Katerina Yuseva, have lived in the United States since 2005. They managed this by overstaying their initial one-year non-immigrant visas. On August 16, 2007, some 18 months after their initial entry, they applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). They are

citizens of Bulgaria, since 2007 a Member State of the European Union, but they belong to its Macedonian minority and assert that they have been persecuted on that basis. First an immigration judge, and later the Board of Immigration Appeals (BIA or Board), turned down their requests. The petitions for review now before us challenge the Board's refusal to reopen their case based on their attorney's alleged ineffectiveness, and its refusal to reconsider the ruling on the motion to reopen. Finding no abuse of discretion in either of the Board's decisions, we deny the petitions for review.

**I**

In their original petitions for asylum and related relief, the Yusevs asserted that they had been members of the United Macedonian Organization Ilinden (UMOI), a party devoted to the rights of ethnic Macedonians (though characterized by the Bulgarian Constitutional Court as a separatist party that could be, and was, banned). They testified about two occasions on which the police assaulted them. In addition, they asserted, the police came looking for them at their home in 2006 and were still looking as of 2007. They also submitted reports detailing Bulgaria's poor treatment of Macedonians. An immigration judge (IJ) denied all relief in a 2013 decision. The judge found that they had missed the one-year deadline for filing an asylum application, 8 U.S.C. § 1158(a)(2)(B), and that their tardiness was not excused by changed circumstances in Bulgaria or other extraordinary circumstances, *id.* § 1158(a)(2)(D). The judge denied their request for withholding and CAT protection on the merits, finding that their experiences did not meet the test for past persecution, nor did they support a finding of likely persecution in the future. The BIA

affirmed and denied their motion for reconsideration. See *Yusev v. Lynch*, 643 F. App'x 603 (7th Cir. 2016) (*Yusev I*).

While the Yusevs were pursuing their petition for review from the denial of their motion for reconsideration in *Yusev I*, they also were proceeding along a second track. Represented by their current counsel, Daniel Thomann, they filed a motion with the Board to reopen the proceedings based on their first lawyer's ineffectiveness. The Board found the motion to reopen untimely, and it rejected the argument that counsel's ineffectiveness excused the delay. Once again, the Yusevs filed a motion to reconsider, and once again, that motion was denied. They have now filed two petitions for review, one from the denial of reopening and one from the refusal to reconsider. Our review of both these decisions is deferential; we may grant relief only if the Board abused its discretion. *Reyes-Cornejo v. Holder*, 734 F.3d 636, 647 (7th Cir. 2013); *El-Gazawy v. Holder*, 690 F.3d 852, 857 (7th Cir. 2012).

## II

### A

We turn first to the Board's denial of the motion to reopen filed by Attorney Thomann on September 1, 2015. This motion was based on the alleged ineffectiveness of the Yusevs' prior counsel, Alexander Vrbanoff. Non-citizens facing removal are allowed to file one motion to reopen within 90 days of a final order of removal. 8 U.S.C. § 1229a(c)(7)(A), (C)(i). In the Yusevs' case, the Board affirmed the original IJ's decision ordering removal through an order dated April 7, 2015. Muddying the waters slightly is the fact that this was not the Board's last word on their original appeal. Instead, on June 17, 2015, the Board partially reopened their case to reinstate the

privilege of voluntary departure. It did so because Vrbanoff had forgotten to submit proof of their payment of a voluntary departure bond; they actually had paid, and so the Board corrected its earlier decision in this minor respect.

The Yusevs argue that their 90-day period for the motion to reopen did not begin running until June 17. If that were true, then their motion would have been timely, as it was filed on September 2, 2015. But that is not the way things work. In *Sarmiento v. Holder*, 680 F.3d 799 (7th Cir. 2012), we joined the Fifth and Ninth Circuits in holding that motions to reopen must be "filed within 90 days *of the specific proceeding being challenged*," which here is the Board's April 7, 2015 order affirming the IJ's decision to require removal. *Id.* at 802 (emphasis added). That is the order to which the Yusevs object; they have no quarrel with the Board's decision to reinstate voluntary departure on June 17. See also *El-Gazawy*, 690 F.3d at 859. If the Yusevs' proposed rule were to be adopted, we might as well write the time limits out of the statute. Any petitioner wanting some extra time could just file a new motion to reconsider and have the clock reset. This is a position we cannot accept. As we noted in *Almutairi v. Holder*, 722 F.3d 996 (7th Cir. 2013), "an order from the BIA resolving everything except an issue relating to voluntary departure" qualifies as a final decision. *Id.* at 1001. The Board thus committed no error when it concluded that the September 2, 2015 motion to reopen was untimely.

That brings us to the question whether the Board abused its discretion in concluding that nothing excused the late filing. In principle, equitable tolling can excuse this kind of failure. *Yuan Gao v. Mukasey*, 519 F.3d 376, 377 (7th Cir. 2008). One

reason that might support equitable tolling is ineffective assistance of counsel. *El-Gazawy*, 690 F.3d at 859. But this is not easy to demonstrate in an immigration proceeding: whatever right to effective counsel exists is present only because of the immigration statutes, and ultimately the Due Process Clause of the Fifth Amendment to the U.S. Constitution; the more familiar Sixth Amendment right is inapplicable because it is limited to criminal proceedings.

Equitable tolling based on counsel's performance requires, at a minimum, that the petitioner show that he exercised due diligence in seeking relief and that he suffered prejudice as a result of the lawyer's deficient performance. *Id.* The due diligence requirement is satisfied if the petitioner can show that "he could not reasonably have been expected to file earlier." *Id.* Prejudice is established if "the error likely affected the result of the proceedings." *Alimi v. Gonzales*, 489 F.3d 829, 834 (7th Cir. 2007).

The Yusevs' showing falls short on both these points. Through Attorney Thomann, they filed a motion to reconsider on May 8, 2015, 31 days after the Board's April 7 decision. That motion briefly mentions that the Yusevs intended to pursue an ineffectiveness claim against Vrbanoff and that they were investigating the issue. This was too tentative to be of any help. Moreover, the only actions they eventually took toward this end were to send Vrbanoff a rather general letter expressing displeasure with his performance and to submit a complaint to the Illinois bar after the deadline for the motion to reopen had expired. The Board was not required to view this as the diligence it has a right to expect.

Their showing of prejudice was no better. The crux of their complaint against Vrbanoff was that he had failed to introduce additional evidence that they believe would have tipped the balance in their favor. Here is what they contend Vrbanoff should have added:

- State Department country reports for Bulgaria for 2005, 2006, and 2007

- Reports from the Bulgarian Helsinki Committee (a local human rights group) from 2007, 2013, and 2014

- A United Nations report from 2011

- A case from the European Court of Human Rights from 2005

These documents do no more than repeat the message that was already before the Board in the evidence that Vrbanoff did introduce. That message was that Macedonians are not a state-recognized ethnicity; that they are barred from forming ethnic pressure groups; and that they face discrimination as well as occasional police harassment. The Board's April 7 decision reflects its awareness of these arguments and thus reinforces the fact that the absence of the "new" evidence did not prejudice the Yusevs.

Oddly, the Yusevs also argue that Vrbanoff was ineffective because he failed to argue that Bulgaria's accession to the European Union in 2007 constituted a changed circumstance for the *worse* and thus supported their tardy claims. We have trouble taking this seriously, given the fact that citizens of every Member State of the European Union, including now Bulgaria, are free to move to any other State, see *Romania and Bulgaria EU Migration Restrictions Lifted*, BBC NEWS (Jan. 1,

2014),       http://www.bbc.com/news/world-europe-25565302.
They also enjoy the full panoply of rights under both the trea-
ties underlying the EU and the European Human Rights Con-
vention. In any event, there is no evidence that the situation
in Bulgaria changed for the worse after its accession to the EU.
The UMOI was banned in 2000, remained banned while Bul-
garia was moving through the accession process, and is still
outlawed today. The police have harassed Macedonians
throughout the relevant period. The Board was well within its
rights to reject this argument.

## B

We have little to add with respect to the Yusevs' motion to
reconsider the Board's denial of their untimely motion to reo-
pen. As we noted earlier, we review this decision only for
abuse of discretion. A motion to reconsider must alert the
Board to additional legal arguments, a change in law, or some-
thing that was overlooked in its earlier decision. See *In re O-
S-G-*, 24 I. & N. Dec. 56 (BIA 2006); *Khan v. Holder,* 766 F.3d 689,
696 (7th Cir. 2014). The Yusevs' motion did none of these
things; it merely reiterated the points they had made in their
earlier submissions. Nothing the Yusevs presented with the
motion to reconsider the motion to reopen cured the defects
to which the Board had pointed.

We end with a word about the Yusevs' effort to attack the
Board's decision not to use a three-member panel in their case.
We addressed and rejected this argument in *Yusev I*, where we
noted that the relevant regulations "give Board members dis-
cretion to refer an appeal to a three-member panel in six dif-
ferent circumstances, but referral is not *required*." 643 F. App'x
at 603, (citing 8 C.F.R. § 1003.1(e)(6)); *Ward v. Holder*, 632 F.3d
395, 398–99 (7th Cir. 2011). The contention has not improved

with time or reiteration. The Board did not abuse its discretion when it chose in this case to proceed with a single judge.

We have considered the other arguments the Yusevs have presented and find no merit in them. The petitions for review are therefore DENIED.