In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2746

MANJIT SINGH SEMBHI,

*Petitioner*,

*v.*

JEFFERSON B. SESSIONS III,
Attorney General of the United
States,

*Respondent.*

Petition for Review of an Order of
The Board of Immigration Appeals
No. A076-726-625

ARGUED FEBRUARY 14, 2018 — DECIDED JULY 31, 2018

Before EASTERBROOK and ROVNER, *Circuit Judges*, and
GRIESBACH, *District Judge.**

* The Honorable William C. Griesbach, Chief Judge of the United States
District Court for the Eastern District of Wisconsin, sitting by designation.

ROVNER, *Circuit Judge.* When Manjit Singh Sembhi failed to appear for an October 2001 hearing in his removal proceeding, the immigration judge ordered him removed to his home country of India. More than 10 years later, Sembhi filed a motion to reopen and rescind the *in absentia* removal order, which the immigration judge denied. Sembhi then sought relief, unsuccessfully, from the Board of Immigration Appeals. After a total of five adverse decisions from the Board, Sembhi now faces the unenviable task of convincing us that the Board abused its discretion in denying his third motion to reconsider and fifth motion to reopen, with the latter being presumptively barred in both number and time. Finding no error in the Board's latest decision that would warrant a remand, we deny Sembhi's petition for review.

## I.

Sembhi, a native and citizen of India, entered the United States in 1995 as a non-immigrant visitor and subsequently overstayed his visa. Two years later, after he was unsuccessful in seeking asylum from an Immigration and Naturalization Service officer, Sembhi was served with a notice to appear charging him with being removable from the country for want of authorization to remain here. Initially, it was Sembhi's expectation that he would be able to obtain an I-130 visa based on his marriage to a U.S. citizen, and with such a visa in hand he would be able to seek adjustment of status. But when Sembhi appeared before an immigration judge for a hearing in August 2001, his counsel reported that his wife had obtained a default judgment of divorce against Sembhi earlier that year, rendering him ineligible for adjustment of status. Sembhi's counsel, Justin Burton, indicated to the judge that Sembhi

intended to explore the possibility of vacating the divorce judgment and, in the alternative, apply for cancellation of removal as an allegedly battered spouse or, failing that, to seek voluntary departure from the country. The judge put the matter over to October 10, 2001, in order to permit Sembhi and his counsel to pursue these possibilities.

When the hearing convened on October 10, Burton was present but Sembhi was not. Burton advised the judge that he had not communicated with his client in several weeks despite attempts to contact him but that Sembhi was on notice of the court date. Agreeing that Sembhi had received both written and oral notice of the October 10 hearing, the judge proceeded with the hearing *in absentia*, and, noting that Sembhi had previously conceded his removability and by virtue of his absence had effectively abandoned any requests for relief from removal, ordered Sembhi removed to India.

More than ten years later, in August 2012, Sembhi, now represented by attorney Sakina Carbide, filed a motion with the immigration judge seeking to reopen and rescind the *in absentia* removal order. Sembhi placed the blame for his failure to appear at the October 2001 hearing squarely on the attorney representing him at that time: Burton.[1] Burton, Sembhi alleged,

---

[1] Sembhi's motion erroneously named attorney Jeffrey Kriezelman as the attorney responsible for his absence, but as later pleadings would make clear, it was Burton whom he should have named. Burton was associated with Kriezelman, whose firm Sembhi had hired in 1997 to represent him in the removal proceeding. Kriezelman had appeared on Sembhi's behalf at prior hearings, but it was Burton who had appeared at both the October 10 hearing as well as the prior hearing in August. Beginning with Sembhi's

(continued...)

had not given him advance notice of the hearing and had made statements leading Sembhi to believe that he need not appear at that hearing; and once the judge ordered him removed *in absentia*, Burton had failed to inform Sembhi of that order, thus preventing him from filing a timely motion to reopen. Sembhi contended that Burton's ineffective assistance in these respects constituted an "exceptional circumstance[ ]" warranting (belated) rescission of the removal order. *See* 8 U.S.C. § 1229a(b)(5)(C)(i) (rescission of *in absentia* removal order requires alien to demonstrate that his failure to appear was due to "exceptional circumstances"); § 1229a(e)(1) (defining "exceptional circumstances" to include circumstances beyond control of alien which are as compelling as extreme cruelty to alien, his child, or parent; serious illness of alien; or serious illness or death of alien's spouse, child, or parent).

The immigration judge denied Sembhi's request. The judge pointed out that Sembhi had been present in court in August 2001, when the October hearing was scheduled, and had received both oral and written notice of that hearing. To the extent he was seeking to reopen the proceeding based on his previous attorney's ineffectiveness, the judge noted that Sembhi had "provided no evidence of [his] compliance with any aspect of the[ ] requirements" that *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (B.I.A. 1988), *overruling vacated by Matter of Compean*, 25 I. & N. Dec. 1 (B.I.A. 2009), specifies for such claims. A.R. 882. *Lozada* requires: (1) that the motion be

---

[1] (...continued)
first motion to reconsider and third motion to reopen, Sembhi and his counsel recognized the error and charged Burton with ineffectiveness.

supported by an affidavit from the respondent setting forth in detail the agreement that he entered into with counsel with respect to the actions to be taken and what representations counsel did or did not make to the respondent in that regard; (2) that counsel be informed of the allegations leveled against him and be given an opportunity to respond; and (3) that the motion reflect whether a complaint has been filed with the appropriate disciplinary authority as to any violation of counsel's ethical or legal responsibilities, and if not, why not. *Id.*

Sembhi appealed the immigration judge's decision to the Board, which dismissed the appeal. Contrary to what he had represented to the immigration judge, Sembhi acknowledged to the Board that his attorney had informed him orally of the hearing date and that Sembhi mistakenly understood (perhaps due to language difficulties) that the hearing was scheduled for October 12 rather than October 10. Sembhi also acknowledged that when he appeared in his attorney's office on October 12, counsel did timely inform him of the *in absentia* removal order but added that there was nothing he could do about that order.

The Board was satisfied that the record supported the immigration judge's finding that Sembhi had both oral and written notice of the October 2001 hearing but nonetheless failed to appear. In that regard, the Board pointed out that Sembhi now admitted that his attorney did inform him of the October hearing date but said that he thought the hearing was set for October 12 rather than October 10. In the Board's view, a mistake in Sembhi's mind as to the hearing date did not constitute an exceptional circumstance excusing his absence. And even if it might so qualify, Sembhi had filed his motion to

reopen and rescind the removal order more than 10 years after the fact, far beyond the 180 days that the statute allowed for a motion to reopen the removal order. *See* 8 U.S.C. § 1229a(b)(5)(C)(i). Because, as Sembhi now acknowledged, he was aware of the removal order in 2001, the Board saw no basis for equitable tolling of the 180-day time limit.

Over two years later, early in 2016, Sembhi presented the Board with a second motion to reopen, returning to a version of events that placed the blame for both his absence at the October 2001 hearing and his failure to timely challenge the *in absentia* removal order on attorney Burton. (Sembhi now alleged that Burton had misinformed him that the hearing was scheduled for October 12, and, after Sembhi failed to appear on October 10, advised him there was nothing he could do about the removal order and that he would have to leave the United States.) By the time he filed this second motion, Sembhi had been married to another U.S. citizen for more than 10 years, and the I-130 visa petition she had filed on his behalf had been approved. But for the removal order, Sembhi would have the opportunity to have his status adjusted, just as he had before his first marriage broke up. Sembhi contended, *inter alia*, that the approval of his I-130 visa and his prospective eligibility for adjustment of status constituted new evidence and a change of circumstances warranting reopening of the removal proceeding.

The Board, in denying this second motion, indicated that it would not revisit Sembhi's claimed lack of notice of the October 2001 hearing or his attorney's alleged misconduct, "as a motion to reopen is not an opportunity to repeat previously-considered arguments." A.R. 416. The Board did add, however,

that to the extent Sembhi meant to advance a new claim of attorney ineffectiveness, he had neither "meaningfully raised" such a claim, nor had he complied with the requirements of *Lozada* for such claims. A.R. 416. (The Board had more to say in its order regarding the equities of Sembhi's changed circumstances, but for present purposes we may restrict our summary to the foregoing aspects of the Board's order.)

Thereafter, Sembhi returned to the Board multiple times on successive motions to reconsider and to reopen, in each instance relying on the alleged ineffectiveness of the multiple attorneys who had represented him previously in an effort to circumnavigate the chronological and numerical limits on his requests to reopen. Sembhi again attributed his failure to both appear at the October 2001 hearing and then to timely challenge the resulting removal order to attorney Burton, who allegedly had misinformed him of the October hearing date, failed to effectively advocate for him in his absence by asking that his presence be waived or that the hearing be continued, and later told him that nothing short of a doctor's note indicating that he was in an emergency room at the time of the October 2001 hearing would suffice to convince the immigration judge to retroactively excuse his absence from that hearing and rescind the removal order. He attributed his decision to wait for more than 10 years before he finally sought to reopen the removal order to another attorney, Cheryl Lenz-Calvo. According to Sembhi, he and his second wife consulted with Lenz-Calvo in 2003, but she told them, erroneously, that he would have to wait for a minimum of 10 years after the entry of his removal order in order to file a motion to reopen the removal proceeding and to apply for any relief based on his

second marriage to a U.S. citizen. And he attributed his failure to meet the *Lozada* requirements in seeking relief based on Burton's alleged ineffectiveness on attorney Carbide, who had prepared the first motion to reopen attributing his failure to appear at the October 2001 hearing to Burton's erroneous advice that he need not attend.

In disposing of these serial motions, the Board (as relevant here) in each instance found no legal or factual error in its prior decisions warranting reconsideration. As for Sembhi's requests to reopen, the Board repeatedly observed that Sembhi had not shown full compliance with the *Lozada* requirements for ineffective assistance claims, despite his representations that he had corrected the omissions, so he could not rely on the purported ineffectiveness of his previous counsels as a basis for tolling the time and numerical limits on his motions to reconsider.

Sembhi's consecutive efforts at having the Board change its mind culminated in the July 25, 2017 order under review here. A.R. 3–4. That order disposed of Sembhi's third motion to reconsider and fifth motion to reopen. To the extent Sembhi's motion to reconsider asked the Board to revisit the denial of his previous two motions to reconsider, the Board pointed out that it was barred by regulation from doing so. *See* 8 C.F.R. § 1003.2(b)(2). To the extent the motion to reconsider was directed at the prior denial of Sembhi's request to reopen, the Board noted that Sembhi had not identified any legal or factual error in its prior decision or any argument that it had over-looked; Sembhi simply repeated the same arguments he had made before, nearly verbatim. Contrary to those arguments, the Board noted that Sembhi had not submitted sufficient

evidence showing that he had provided notice to his former attorneys of his ineffectiveness allegations as required by *Lozada*; simply filing a charge with the Illinois Attorney Registration and Disciplinary Commission ("ARDC"), the Board added was insufficient. "*Lozada* compliance is especially important," the Board explained, "as the attorneys should have the opportunity to answer the assertions made against them. Proper evaluation of the respondent's ineffective assistance allegations includes consideration of prior counsel's responses, if any, to the alleged deficient performance." A.R. 3–4. The Board went on to deny Sembhi's fifth motion to reopen, finding that he had not established an exception to the chronological and numerical limits barring consideration of that motion. The only new evidence accompanying the motion to reopen was Lenz-Calvo's response to the ARDC charge Sembhi and his wife had filed; and that response revealed that although Lenz-Calvo had had preliminary discussions with Sembhi, they had not entered into an attorney-client relationship with her concerning the removal proceedings. "Under the circumstances," the Board concluded, "the respondent has not met his burden of demonstrating ineffective assistance of counsel to equitably toll the time and number limits on motions. We will not revisit the remaining ineffective assistance allegations, as we have already considered and rejected them." A.R. 4 (citations omitted). Finally, the Board declined to exercise its discretion to *sua sponte* reopen, as Sembhi had not shown there were exceptional circumstances warranting that action.

## II.

Sembhi's serial motions to the Board to reopen and reconsider its prior rulings denying reopening trace back to the immigration judge's 2012 order refusing his original motion to reopen the removal proceeding and rescind the *in absentia* removal order the judge had entered in 2001 as well as the Board's 2013 order dismissing Sembhi's appeal from the immigration judge's adverse decision on that motion. Recall that the Board was not convinced at the outset that Sembhi had a meritorious case to make for rescinding the removal order: Sembhi was on notice of the October 2001 hearing that he missed, the Board pointed out, and his professed confusion about the date of that hearing did not constitute the sort of extraordinary circumstance that would warrant reopening the proceeding and rescinding the removal order.

Sembhi would like us to review the Board's judgment on that point and conclude that it was an abuse of discretion. Citing *Singh v. INS*, 295 F.3d 1037, 1040 (9th Cir. 2002), Sembhi argues that confusion about a hearing date can constitute extraordinary circumstances excusing an alien's failure to appear, where he has previously demonstrated a strong intention to appear and defend against removal as evidenced by his prior record of attendance and his likely eligibility for relief from removal. Sembhi's prospects for avoiding removal as of October 2001 were less rosy than the alien in *Singh*'s were, given his divorce. Sembhi's counsel believes that he would have been able to secure voluntary departure if no other relief, although it is not clear that the abstract possibility of such discretionary relief is enough to place his case on par with *Singh*. *See Valencia-Fragoso v. INS*, 321 F.3d 1204, 1205–06 (9th

Cir. 2003) (per curiam) (distinguishing *Singh* where sole relief potentially available to alien was voluntary departure).

But given Sembhi's delay in pursuing reopening, and the limits in number and time on his efforts to seek reopening, we cannot reach that issue unless Sembhi first convinces us that the Board committed some error in concluding that he has not demonstrated a basis for equitably tolling those limits. The basis Sembhi has proffered is the alleged ineffective assistance of his previous attorneys. But the Board concluded that Sembhi never satisfied the prerequisites that its decision in *Lozada* establishes for those claims. And that is where our own analysis begins and ends, for we agree with the Board that Sembhi has not demonstrated compliance with *Lozada*.

Notwithstanding the number of orders the Board has issued in Sembhi's case, the only order before us now is the Board's most recent order of January 25, 2017. That order denied Sembhi's fifth motion to reopen, as well as his motion to reconsider its prior order denying his fourth motion to reopen. We review the Board's denial of both requests for abuse of discretion. *See INS v. Abudu*, 485 U.S. 94, 107, 108 S. Ct. 904, 913 (1988); *Yusev v. Sessions*, 851 F.3d 763, 766 (7th Cir. 2017).

With respect to the motion to reconsider, there is no dispute that Sembhi's fourth motion to reopen was barred in time, given that it was filed more than 90 days after the April 2013 dismissal of his appeal from the immigration judge's order refusing to rescind the *in absentia* removal order. *See* 8 U.S.C. § 1229a(c)(7)(C)(i); *Yusev*, 851 F.3d at 766. So the relevant question is whether there is an equitable basis warranting

tolling of that limitation. *See id.* at 767 (time and numerical limits may be tolled when there is equitable basis to do so). Sembhi has argued that his former attorneys' ineffective assistance supplies this basis. *See id.* (recognizing that ineffective assistance of counsel can be appropriate basis for lifting time and numerical limits). The Board concluded otherwise, and Sembhi bears the burden of convincing us that there was some legal or factual error in the Board's decision (denying his fourth motion to reopen) that warranted reconsideration. *See* 8 U.S.C. § 1229a(c)(6)(C); 8 C.F.R. § 1003.2(b)(1); *e.g., Aparicio-Brito v. Lynch*, 824 F.3d 674, 687 (7th Cir. 2016).

As for the (fifth) motion to reopen, it was not only late, given that it was filed more than 90 days after the Board's 2013 order dismissing his appeal from the immigration judge's refusal to rescind the 2001 removal order, but also numerically barred, as the regulation allows an alien to file only one such motion. 8 U.S.C. § 1229a(c)(7)(A); 8 C.F.R. § 1003.2(b)(2). So again the question is whether Sembhi is entitled to equitable tolling of those limitations in light of the evidence Sembhi submitted in support of his latest motion to reopen, and more to the point whether the Board abused its discretion in concluding that he is not.[2]

Sembhi is alleging that attorneys Burton (who told him there was essentially no hope of reopening and rescinding the *in absentia* removal order absent an emergency room note) and

---

[2] Apart from Sembhi's motion to reopen, the Board also considered whether it should exercise its power to *sua sponte* reopen the removal proceeding but declined to do so. That decision is beyond our jurisdiction to review. *E.g., Fuller v. Lynch*, 833 F.3d 866, 872 (7th Cir. 2016).

Lenz-Calvo (who told him he had to wait for 10 years) were responsible for his delay in seeking to reopen the removal proceeding, and that attorney Carbide was responsible for his initial failure to comply with the *Lozada* requirements as to the ineffectiveness of the other two attorneys.

An alien in removal proceedings does not have a right to counsel per se, but he does have a due process right to a fair hearing, and his attorney's ineffectiveness can excuse a default where it deprives him of a fundamentally fair proceeding in which he may make his case. *Lozada*, *supra*, 19 I. & N. Dec. at 638; *see, e.g.*, *Sanchez v. Sessions*, — F.3d —, 2018 WL 3285780, at *3 (7th Cir. July 5, 2018). In order to make out a *prima facie* claim of attorney ineffectiveness, *Lozada* as we have mentioned requires an alien to: (1) submit an affidavit identifying his agreement with the attorney he now charges with ineffectiveness, including the tasks counsel represented he would undertake on his behalf; (2) show that he has given his former counsel notice of his allegations of ineffectiveness and the opportunity to respond to them; and (3) to the extent the charged ineffectiveness involves a violation of counsel's ethical or legal duties, indicate whether he has filed a complaint with the appropriate attorney disciplinary agency and, if not, explain why not. *Lozada*, 19 I. & N. Dec. at 639. Collectively, these requirements help to establish that a charge of ineffectiveness has enough substance to warrant the time and effort that will be required to resolve the claim on its merits. *See id.* at 639–40; *Patel v. Gonzales*, 496 F.3d 829, 831 (7th Cir. 2007). Toward that end, the requirement that the allegedly ineffective attorney be given notice of the allegations serves to discourage baseless charges, afford the attorney whose competence is

being questioned the chance to present his version of events, and, where the attorney admits having erred, expedite the resolution of the claim. *Lozada*, 19 I. & N. Dec. at 639–40; *Guzman-Rivadeneira v. Lynch*, 822 F.3d 978, 983–84 (7th Cir. 2016); *Patel*, 496 F.3d. at 832. So long as the Board does not act arbitrarily, it may refuse to address the merits of ineffectiveness claims when the alien has not complied with these requirements. *Id.* at 831.

Sembhi has never shown that he provided notice of his ineffectiveness claims and the opportunity to respond to either Burton or Carbide. His briefs represent that he did so, but he has tendered no evidence as to when and how he gave them notice. Representations in a brief do not constitute evidence of compliance with *Lozada*'s requirements. *Patel*, 496 F.3d at 832–33. The affidavits Sembhi submitted to the Board are silent on the matter of notice,[3] and in support of his assertion on this point, his briefs to both the Board and to this court have cited only proof that he filed disciplinary complaints with the Illinois ARDC against these attorneys. The requirement that an alien file a disciplinary charge is distinct from the requirement that

---

[3] We note that Sembhi's original affidavit, filed in support of the 2012 motion asking the immigration judge to rescind the *in absentia* removal order, indicated that he had filed a complaint with the "bar committee" regarding his former counsel's performance and that he sent a copy of the complaint to counsel. A.R. 871. But that affidavit misidentified Kriezelman as the attorney who was responsible for his absence at the October 2001 hearing and Kriezelman as the attorney to whom he sent a copy of his bar complaint. So based on that affidavit, we can have no confidence that Burton, who handled the October 2001 hearing, was ever notified of Sembhi's charge of ineffectiveness.

he give his former attorney notice of the alleged ineffective-
ness. *Marinov v. Holder*, 687 F.3d 365, 369 (7th Cir. 2012).
Copying counsel on a disciplinary charge does not necessarily
alert him that his conduct is at issue in a pending immigration
proceeding and that he has the right to be heard in that
proceeding as well as the disciplinary proceeding. More to the
point, the fact that the petitioner has filed a charge with the
state disciplinary agency does not by itself establish that the
attorney in question has received notice of the charge, as the
ARDC does not invariably ask an attorney for a response to the
charge. *See Marinov*, 687 F.3d at 369; *see also* Illinois Attorney
Registration & Disciplinary Commission website,
http://www.iardc.org/htr_filingarequest.html#9 (attorney is
notified of complaint if commission decides to investigate)
(visited July 21, 2018). In short, Sembhi failed to establish that
he gave the requisite notice to Burton and Carbide of his
ineffectiveness allegations.

The allegations against Lenz-Calvo arguably stand on a
different footing, as Sembhi submitted proof that she filed a
response to the ARDC charge he filed against her (so we know
that she had at least some notice of his allegations); but that
response, as the Board reasoned, reveals a fatal flaw in
Sembhi's claim. Lenz-Calvo's response indicates that although
Sembhi consulted with her, she and Sembhi never entered into
an attorney-client relationship. Sembhi does not dispute the
point; indeed, the evidence he submitted in an effort to comply
with *Lozada* itself indicates that he and his wife never engaged
Lenz-Calvo to represent Sembhi because they did not have the
money to do so. (There is a dispute between Lenz-Calvo and
Sembhi as to the size of the retainer she requested, but that is

immaterial.) *Lozada*'s first requirement is that the alien describe the terms of his agreement with counsel and identify the specific tasks that counsel undertook to perform. 19 I. & N. Dec. at 639. Given that Lenz-Calvo never undertook to perform any tasks on Sembhi's behalf, the Board committed no error in concluding that any mistake or omission on her part did not deprive him of a fundamentally fair proceeding in contravention of his Fifth Amendment right to due process.

The Board thus committed no error in finding that Sembhi failed to meet *Lozada*'s threshold requirements for making a claim of attorney ineffectiveness. As to Lenz-Calvo, there was no undertaking to act on Sembhi's behalf that might support such a claim, and as to Burton and Carbide, Sembhi did not establish that he gave them the requisite notice of his charges.

In the absence of a potentially meritorious claim of ineffectiveness, Sembhi was left without a basis on which to urge the Board to equitably toll the limits in number and time on his motions to reopen; and absent a valid basis for tolling those limits, he also had no ground on which to argue that the Board should reconsider its previous decision to deny his request to reopen the proceeding. We therefore have no need to consider whether, assuming Sembhi could surmount the obstacles to consideration of his motion(s) to reopen, the Board, in the exercise of its discretion, improperly rejected Sembhi's request to reopen its 2013 order dismissing his appeal from the unsuccessful effort to convince the immigration judge to rescind the *in absentia* removal order.

### III.

For all of the foregoing reasons, we DENY Sembhi's petition to review.