In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2488

ISMAEL LOZANO-ZUNIGA,

*Petitioner*,

*v.*

LORETTA E. LYNCH,
Attorney General of the United States,

*Respondent*.

On Petition for Review of an Order
of the Board of Immigration Appeals.
A200-778-163

ARGUED FEBRUARY 19, 2016 — DECIDED AUGUST 12, 2016

Before MANION and ROVNER, *Circuit Judges* and BLAKEY,
*District Judge*.*

ROVNER, *Circuit Judge*. Ismael Lozano-Zuniga is a native
and citizen of Mexico. He arrived in the United States in
April 2002, when he was fourteen years old, but was not

* The Honorable John Robert Blakey, of the Northern District of Illinois,
sitting by designation.

admitted or paroled by an immigration officer. Lozano-Zuniga came to the attention of the Department of Homeland Security (Department) after an arrest and conviction for driving under the influence, and on September 17, 2010, the Department issued a notice to appear, charging Lozano-Zuniga with removability pursuant to INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for having entered the country without being admitted or paroled.

**I.**

At the initial hearing in front of the immigration judge, Lozano-Zuniga conceded the charge of removability, but filed an application for withholding of removal and protection under the Convention Against Torture (CAT).

At his March 2012 hearing, Zuniga testified that he came to the United States from Rio Grande, Zacatecas, Mexico in 2004 with his mother and sister to join his father and two older brothers. He also testified that prior to leaving Mexico, his mother received a telephone call asking for information about family members in the United States, in which the caller implied that he wanted money and would kidnap Lozano-Zuniga or his sister in order to get ransom money from relatives living in the United States. His mother did not report the incident to the police. She did not come to court to testify about the phone call or submit an affidavit. When asked about this by the immigration judge, Lozano-Zuniga responded that his mother is in this country illegally and feared coming to the immigration court. He noted that he thought the letter he submitted from a member of the Seventh Day Adventist church in Mexico, stating that members were subject to physical and verbal abuse, would suffice in lieu of her testimony.

Lozano-Zuniga also testified that he fears that if he should return to Mexico, he would be targeted as a young Mexican male returning from the United States and forced to work for the Mexican gang, the Zetas, as part of their violent drug trafficking operations. Lozano-Zuniga testified that the Zetas control everything, that many police members and other authorities have been corrupted by them, and that their ranks and presence has swollen since he left in 2004. Lozano-Zuniga admitted that he had never been personally threatened by the Zetas, and that his grandmother lives without incident in his city of origin (Lozano-Zuniga testified that the Zetas are not interested in older women), but he claims that if he returned to his small hometown, his return would be obvious and he would stick out as a target for the Zetas who would force him into criminal service.

While living in Mexico, Lozano-Zuniga testified, people criticized his Seventh Day Adventist religion and he believed the situation was getting much worse. According to his testimony, approximately two years before his hearing, a couple of members of the Seventh Day Adventist church had been killed. When asked by the immigration judge who killed them, he said "the only group localized in our area there is the group of the Zetas. So in my opinion, they are the ones responsible." (R. 130).

Lozano-Zuniga has graduated from high school in the United States and is taking college courses in medicine. He continues his practice as a Seventh Day Adventist.

On November 21, 2013, in a thorough opinion, the Immigration Judge found Lozano-Zuniga to be generally credible, but found that he did not establish a clear probability that he would face persecution or torture upon his removal to Mexi-

co. Lozano-Zuniga appealed to the Board of Immigration
Appeals (Board) who confirmed the decision of the immigra-
tion judge. Lozano-Zuniga filed a timely petition for review.

## II.

"When the Board agrees with the decision of the immi-
gration judge, adopts that decision and supplements that de-
cision with its own reasoning, as it did here, we review the
immigration judge's decision as supplemented by the
Board." *Cece v. Holder*, 733 F.3d 662, 675 (7th Cir. 2013) (en
banc). We review the findings of fact for substantial evidence
and reverse only if the evidence compels a different result.
*Id.* at 675–76. We review questions of law de novo, deferring
to the Board's reasonable interpretation set forth in prece-
dential opinions interpreting the statute. *Id.* at 668 (citing
*Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc.*,
467 U.S. 837, 842–43). The Court will affirm the agency deci-
sion as long as it is supported by reasonable, substantial, and
probative evidence. *Aparicio-Brito v. Lynch*, No. 14-3062, 2016
WL 3068098, at *6 (7th Cir. May 31, 2016). The standard is
extremely deferential and this court will not reverse simply
because we would have decided the case differently, but ra-
ther only if the facts compel the opposite conclusion. *Tawuo
v. Lynch*, 799 F.3d 725, 727 (7th Cir. 2015).

## A.

We begin with a review of the immigration court's and
Board's decisions on withholding of removal. A request for
withholding of removal seeks relief under the Immigration
and Nationality Act, "which prohibits the removal of a per-
son to a country where his 'life or freedom would be threat-
ened ... because of [his] race, religion, nationality, member-

ship in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *Duarte-Salagosa v. Holder*, 775 F.3d 841, 845 (7th Cir. 2014). To demonstrate eligibility for this relief, Lozano-Zuniga must establish a clear probability that his life or freedom will be threatened upon his return to his country. *Dominguez-Pulido v. Lynch*, 821 F.3d 837, 845 (7th Cir. 2016). A clear probability means it appears more likely than not that he will suffer persecution if removed. *Musa v. Lynch*, 813 F.3d 1019, 1023 (7th Cir. 2016).

Ordinarily a court begins by looking to see if a petitioner has demonstrated that he has suffered from past persecution. *Zeqiri v. Mukasey*, 529 F.3d 364, 370 (7th Cir. 2008). With such a finding, the immigration judge can form a rebuttable presumption that the immigrant has a reasonable fear of future persecution. *Id.* But without it, the court must go on to assess whether the petitioner has a reasonable fear of future persecution. *Toure v. Holder*, 624 F.3d 422, 428 (7th Cir. 2010). In this case, Lozano-Zuniga concedes that he does not challenge the agency's finding that he did not demonstrate past persecution. (Petitioner's reply brief at 1). And rightly so, as one threatening phone call placed to his mother ten years prior, and vague criticisms of his religion do not suffice to establish past persecution.

Consequently, we look to see if the immigration judge and Board properly determined that Lozano-Zuniga failed to meet his burden of demonstrating a clear probability of future persecution "because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Lozano-Zuniga makes two claims in his petition. First that he would be subject to persecution as a young man recently removed from the United

States with family members still in the United States (who thus might be perceived to have a source of money). *See* Decision of the Board at 2 (R. 3). Second, that he would be persecuted as a practicing Seventh Day Adventist in a country in which such practitioners are in a small minority. Lozano-Zuniga describes this latter category in his briefs as a "social group." *See* Petitioner's brief at 5; Petitioner's reply brief at 1. It is not. It is a religion. And indeed these distinctions have been blurred in the proceedings below. Although it does not matter in terms of the burdens or tests the immigration courts or this court applies, it does matter in regards to one threshold issue. When a petitioner claims that he has been persecuted based on his membership in a social group, the adjudicating court must determine first whether the group constitutes a social group under the Immigration and Nationality Act, and second whether there is a nexus between the persecution and the membership in the social group. *Cece*, 733 F.3d at 668, 673. This circuit defines social group as a group "whose membership is defined by a characteristic that is either immutable or is so fundamental to individual identity or conscience that a person ought not be required to change." *Cece*, 733 F.3d at 669. There is no parallel definition of religion. Therefore, when assessing persecution based on religion, we do not put the legitimacy of religion under a microscope in quite the same way. *See Cosa v. Mukasey*, 543 F.3d 1066, 1069 (9th Cir. 2008) ("That Millenism may be an obscure, non-mainstream religion is no basis to discount a believer's faith"); *Jiang v. Gonzales*, 485 F.3d 992, 995 (7th Cir. 2007) (emphasizing that immigration judges may not rely on personal beliefs and perceived common knowledge about religion); *Fessehaye v. Gonzales*, 414 F.3d 746, 756 (7th Cir. 2005) (cautioning the Board that it may not require more ev-

idence of conversion to a claimed religion than reasonably can be expected).

We begin then with Lozano-Zuniga's claim that there is a clear probability that his life or freedom would be threatened in the future upon his return to Mexico because of his membership in the social group of young men returning to Mexico after living in the United States. The Board stated that "[t]he respondent's expressed fear that he will be harmed by members of a criminal gang in Mexico, including based on his membership in a group allegedly composed of 'recent deportees from the United States who might be perceived to have money' or of 'practicing Seventh Day Adventists who have returned to Zacatecas, Mexico,' does not establish that he belongs to a 'particular social group' within the meaning of section 101(a)(42)(A) of the Act." Decision of the Board at 2 (R. 3). It is not entirely clear what the Board is saying about whether the social group of young men returning from the United States is a cognizable social group. In any event, "[w]hether a group constitutes a particular social group under the Immigration and Nationality Act is a question of law that we review *de novo*, while giving *Chevron* deference to the Board's reasonable interpretation set forth in precedential opinions interpreting the statute. *Cece*, 733 F.3d at 668 (citing *Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)). We are less sure than the Board was that Lozano-Zuniga has not stated a cognizable social group. When evaluating social groups, we have noted that "[s]ometimes the characteristic is immutable because a shared past experience or status has imparted some knowledge or labeling that cannot be undone." *Cece*, 733 F.3d at 670 (citing cases in which shared past experience forms a social group, including: former truck drivers with

certain skills needed by persecutors; former members of violent and criminal factions; tattooed former gang members; parents of Burmese dissidents; educated, landowning class of cattle farmers; former Ugandan child soldiers). The bar to establishing a social group is rather low because it is only the very first step in establishing relief under the immigration laws. After that, a petitioner must still establish that she fits within the cognizable social group and that there is a nexus between the persecution and the membership in the social group. *Cece*, 733 F.3d at 673. And of course, at the end of the day, the petitioner must bear the burden of demonstrating a clear probability that his life or freedom will be threatened upon his return to his country. *Duarte-Salagosa*, 775 F.3d at 845.

We need not determine whether the social group of men returning from the United States who may be perceived to have access to money (or similar group) is a cognizable one under the Act, however, because the immigration court correctly determined that Lozano-Zuniga failed to establish that there is a clear probability that he would be subject to future danger because of his membership in this group. As the immigration court noted, he did not present any specific facts showing that he would be singled out for persecution, and presented only generalized claims of unrest in Mexico. Decision of the Immigration Judge at 12-13, (R. 79-80). Lozano-Zuniga references anecdotal evidence about abductions of young men and gang recruitment, but fails to submit evidence of a clear probability that he would be abducted. The United States cannot protect aliens from generalized unrest in their homelands. *Zeqir*, 529 F.3d at 370. A petitioner must set forth specific evidence indicating that it would be more likely than not that he would be individually targeted for

harm. *Salim v. Holder*, 728 F.3d 718, 722-24 (7th Cir. 2013). Fears of generalized harms are not enough. *Kobugabe v. Gonzales*, 440 F.3d 900, 902 (7th Cir.2006). In his brief, Lozano-Zuniga presents the generalized argument that, "[t]he Zetas do kidnap persons with relatives in Mexico; the Zetas do impress young men into criminal servitude; the Zetas do act with impunity from the government, and with the aid of government officials." Petitioner's brief at 9. Even if Lozano-Zuniga has presented evidence that the gang problem has grown worse in Mexico (and it is not entirely clear that he has, other than offering his own conclusions), Lozano-Zuniga must still show "specific, detailed facts supporting the reasonableness of his fear that he will be singled out for persecution." *Salim*, 728 F.3d at 724. *See also, Munoz-Avila v. Holder*, 716 F.3d 976, 983 (7th Cir. 2013) ("We have repeatedly recognized that the level of overall danger in a country is not a sufficient basis to find persecution, and that the petitioner must demonstrate that he or she is likely to be singled out."); *Sayaxing* v. *I.N.S.*, 179 F.3d 515, 520 (7th Cir. 1999) (a petitioner must "present specific evidence that his encounters with the government were of such a 'magnitude and frequency' that they would cause a reasonable person to fear being singled out for persecution … and to demonstrate that his fear of persecution pertained to him individually, rather than to the population generally."). Because Lozano-Zuniga has not done so, the immigration court did not err by finding that he had not met his burden.

For the same reasons, we conclude that the immigration judge properly found that Lozano-Zuniga had not established that it was more likely than not that he would face

persecution based on his religion if he returns to Mexico.[1]
Before the immigration judge, his evidence about persecu-
tion of Seventh Day Adventists was limited to his testimony
that he had witnessed people making fun of Seventh Day
Adventists and that the Zetas had killed a couple who were
Seventh Day Adventists. When asked by the immigration
judge who killed them, Lozano-Zuniga said "the only group
localized in our area there is the group of the Zetas. So in my
opinion, they are the ones responsible." (R. 130). He also
submitted a letter from a member of the Seventh Day Ad-
ventist church in his home region who claimed that mem-
bers of the church have been verbally and physically abused.
(R. 251-52). Once again we need not analyze any past perse-
cution as Lozano-Zuniga has rightfully declined to challenge
such a finding, and indeed he has not demonstrated any past
persecution against himself personally based on his religion.
Petitioner's reply brief at 1.

Nor has he established any specific detailed facts that he
personally would be singled out for persecution should he
return, as opposed to demonstrating a generalized disfavor-
ing or even harassment of Seventh Day Adventists. *See Sal-
im*, 728 F.3d at 724. Lozano-Zuniga claims that the immigra-
tion judge based her decision on the fact that, with 600,000-
700,000 members and growing, the Seventh Day Adventists
are one of the largest religious affiliations in Mexico after the

---

[1] It is true, as Lozano-Zuniga argues, that the BIA only barely addressed
his argument about his religion. The decision of the BIA, however, sup-
plants that of the immigration judge. "[W]e review the IJ's decision
wherever the Board has not supplanted it with its own rationale; where
the Board has spoken, we review its opinion." *Sarhan v. Holder*, 658 F.3d
649, 653 (7th Cir. 2011).

Catholic Church. Lozano-Zuniga interprets the immigration
judge's use of these statistics to mean that she has concluded
that the church was too large to be the target of persecution.
The immigration judge did make some comments about the
size of the Seventh Day Adventist population in Mexico (but
did so in discussing CAT claim, but we will address it here
as Lozano-Zuniga raises it in the withholding of removal
part of his brief). She did not base her decision about future
persecution on this fact, but rather on the fact that Lozano-
Zuniga failed to demonstrate specific detailed facts that it
was more likely than not that he would be singled out for
persecution. Decision of the Immigration Judge at 12, 16
(R. 79, 83). And in doing so, the immigration judge was spe-
cifically rejecting a theory that Lozano-Zuniga's fear of fu-
ture persecution could be based upon the level of overall
danger in a country. *See Munoz-Avila*, 716 F.3d at 983 (noting
that the level of overall danger in a country is not a sufficient
basis to find persecution, and that the petitioner must
demonstrate that he or she is likely to be singled out.). The
district court correctly determined that Lozano-Zuniga had
failed to meet his burden of demonstrating a clear probabil-
ity of persecution based on his social group or religion as re-
quired for withholding of removal.

### B.

The burden for CAT protection is no less stringent than
that for withholding of removal; the applicant must show
"that it is more likely than not that he or she would be tor-
tured if removed to the proposed country of removal." *Sar-
han v. Holder*, 658 F.3d 649, 653 (7th Cir. 2011).

> 'Torture' is defined as the intentional infliction
> of 'severe pain or suffering' for the purpose of

> coercion,   punishment,   or   discrimination
> 8 C.F.R.  §§  1208.16(c)(2),  208.18(a)(1).  Torture
> does  not  include  'lesser  forms  of  cruel,  inhu-
> man  or  degrading  treatment  or  punishment,'
> id. § 208.18(a)(2), or suffering inherent to 'law-
> ful  sanctions'  imposed  for  violating  the  law,  id.
> § 208.18(a)(3).

*Borovsky v. Holder*, 612 F.3d 917, 923 (7th Cir. 2010) (8 C.F.R.
§ 208.18). An applicant for CAT protection must demon-
strate that the torture was inflicted by or at the behest of, or
with the consent or acquiescence of, a public official. 8 C.F.R.
§ 208.18(a)(1); *Toure*, 624 F.3d at 429. The requirements for
proving torture create a high bar for relief. *Sarhan*, 658 F.3d
at 653.

The Board found insufficient evidence to conclude that it
was more likely than not that Lozano-Zuniga would be tor-
tured with the government's acquiescence if he returned to
Mexico, and we cannot say that the record compels a contra-
ry result. We need not address the issue of social group
again, because unlike the remedy of withholding of removal,
relief under the CAT is not conditioned on proof that the al-
ien has been persecuted because of one of the five grounds
listed in the INA. *Sarhan*, 658 F.3d at 653. In assessing
whether Lozano-Zuniga has met his burden, the immigra-
tion judge must consider various factors including: "evi-
dence of past torture; evidence that the applicant could relo-
cate to a different part of her home country; evidence of
'gross, flagrant or mass violations of human rights within
the country of removal'; and other relevant country condi-
tions." *Tchemkou v. Gonzales*, 495 F.3d 785, 795 (7th Cir. 2007)
(citing 8 C.F.R. § 208.16(c)(3)(i)-(iv)).

The immigration judge concluded that Lozano-Zuniga had not established that it was more likely than not that he would be tortured in Mexico. Lozano-Zuniga's evidence, all of which the immigration judge considered, was paltry at best: he had the past telephone call to his mother, the murder of two Seventh Day Adventists by an unknown assailant, and the general danger caused by the Zetas in Mexico, along with the fact that some law enforcement officers were corrupt and helping the Zetas. Lozano-Zuniga, however, had never been personally threatened or harmed.

Just as is the case with withholding of removal, evidence about generalized violence or danger within a country is not sufficient to make a claim that it is more likely than not that a petitioner would be tortured upon return to his home country. *Lenjinac v. Holder*, 780 F.3d 852, 856 (7th Cir. 2015) ("[R]eports that torture occurs in a foreign country … are insufficient … without evidence that the petitioner will be tortured if he returns."); *Rashiah v. Ashcroft*, 388 F.3d 1126, 1133 (7th Cir. 2004) (upholding the Board's denial of CAT relief where the record contained evidence of torture in the petitioner's home country, but no evidence that applicant himself would be targeted); *Jan v. Holder*, 576 F.3d 455, 458 (7th Cir. 2009) ("the country reports and news articles on police corruption in Pakistan are too general and vague to suggest that [the petitioner] in particular would face torture.")

The immigration judge did not ignore the evidence of the gang problems in Mexico. To the contrary, she referenced Lozano-Zuniga's evidence from articles and news reports about killings and prison breaks and government official corruption. Nevertheless, she concluded that there was "scant evidence that would indicate such attacks happen

with the necessary frequency or rise to the level of torture so as to qualify the respondent for relief." Decision of the Immigration Judge at 16, (R. 83).

And as for his claim that he would be tortured based on his religious beliefs, the only evidence Lozano-Zuniga had for this proposition was a claim that a couple from his church had been killed and a letter from someone in his church that members had been verbally and physically abused. Discrimination and taunts by private citizens are not torture. *Rashiah*, 388 F.3d at 1132. Lozano-Zuniga has presented no evidence that he would be individually targeted or of the requisite amount of government action or collusion, and, as the immigration judge concluded, Lozano-Zuniga "has not provided enough details to determine if these experiences are even relevant to his claim." Decision of the Immigration Judge at 16, (R. 83).

Both the immigration judge and the Board found that Lozano-Zuniga failed to present sufficient evidence that it was more likely than not that he would be tortured at the hands of, or with the acquiescence of, a government official. "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Lopez v. Lynch*, 810 F.3d 484, 493 (7th Cir. 2016) (citing 8 C.F.R. § 1208.18(a)(7)). As the Board held, "[t]he record does not sufficiently substantiate that any Mexican public official currently would seek to torture the respondent or would acquiesce in or exhibit willful blindness toward any torture inflicted on him by any gang member, any criminal, or anyone

else." Decision of the Board at 2-3. (R. 3-4). Based on the record, we cannot disagree.

The record does not compel a conclusion that Lozano-Zuniga proved eligibility for withholding of removal or protection under CAT. Consequently, the petition for review is DENIED.