In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 20-1799 & 20-2998

YVES MABUNEZA,

*Petitioner,*

*v.*

MERRICK B. GARLAND,
Attorney General of the United States,

*Respondent.*

Petitions for Review of Orders of the
Board of Immigration Appeals.
No. A078-767-348

ARGUED SEPTEMBER 9, 2021 — DECIDED OCTOBER 28, 2021

Before KANNE, HAMILTON, and ST. EVE, *Circuit Judges.*

KANNE, *Circuit Judge.* In March 2017, the Department of Homeland Security commenced removal proceedings against Yves Mabuneza. He requested deferral of removal because he feared that he would be tortured if he were deported to the Democratic Republic of the Congo ("DRC"). The immigration judge ("IJ") denied the request for deferral, and the Board of Immigration Appeals dismissed Mabuneza's appeal of that

decision. Mabuneza then filed a motion to reconsider the dismissal, which the Board denied. Because the IJ's decision was supported by substantial evidence, we deny the petition for review of the denial of Mabuneza's request for deferral of removal. And because the Board did not commit a legal or factual error in its analysis, we deny the petition for review of the denial of the motion to reconsider.

## I. BACKGROUND

Mabuneza is a native and citizen of the DRC. He entered the United States in 2000 as a refugee and became a lawful permanent resident in 2001. After a 2006 conviction for petit larceny and a 2016 conviction for aggravated sexual abuse, Mabuneza was placed in removal proceedings in March 2017. To avoid removal to the DRC, Mabuneza applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

After a hearing, the IJ issued a written decision on April 12, 2019, denying Mabuneza's applications and finding that Mabuneza was not eligible for deferral of removal under the CAT. Mabuneza filed a motion to reopen, which the IJ granted. The IJ permitted Mabuneza to present additional evidence and testimony at a hearing. On October 28, 2019, the IJ issued a second written decision, again denying Mabuneza's CAT application.

In support of his application, Mabuneza stated that he received refugee status from the United States because he had faced persecution as a member of the Tutsi ethnic group and that he would be targeted again if he were deported to the DRC. He also claimed that he would be viewed as a political dissident for being featured in a series of 2000 and 2001

Chicago Tribune articles describing his and his family's experiences as refugees, that he would be detained upon return to the DRC as a traitor who sought asylum abroad, and that he would be seen as a threat due to his sexual abuse conviction. Mabuneza submitted country conditions evidence showing that persons returning to the DRC may face suspicion from the police and be arrested and detained, and that the Congolese government sometimes tortures detainees and prisoners for political and human rights activism. In her later decision, the IJ wrote that although "the harm [Mabuneza] faced in the [DRC] twenty years ago likely rose to the level of torture, especially considering that he was granted refugee status in 2000," he nonetheless failed to establish a CAT claim "because the harm he fears is speculative, and he was unable to show a hypothetical chain of events is more likely than not to occur."

Mabuneza appealed to the Board of Immigration Appeals. On April 24, 2020, the Board adopted and affirmed the IJ's decision in full and dismissed the appeal, stating that Mabuneza had not shown factual or legal error in the IJ's determination that he did not meet his burden for CAT relief. Mabuneza asked the Board to reconsider, requesting review by a three-member panel. A single member of the Board denied his motion to reconsider on September 15, 2020.

## II. ANALYSIS

Mabuneza petitions for review of (1) the Board's dismissal of his appeal and (2) the Board's denial of his motion to reconsider. We address each issue in turn.

### A. Application for Deferral of Removal

An applicant is eligible for withholding or deferral of removal under the CAT if the applicant can "establish that it is

more likely than not that he or she would be tortured if removed." 8 C.F.R. § 1208.16(c)(2). In accordance with the CAT's language, we have interpreted this provision as requiring a showing of "a substantial risk that a given alien will be tortured if removed from the United States." *Rodriguez-Molinero v. Lynch*, 808 F.3d 1134, 1136 (7th Cir. 2015). An IJ assessing whether an applicant has shown a substantial risk of torture should consider evidence of past torture inflicted upon the applicant; evidence that the applicant could relocate to a part of the country of removal where he is not likely to be tortured; evidence of gross, flagrant, or mass violations of human rights within the country; and other relevant information regarding country conditions. 8 C.F.R. § 1208.16(c)(3). Moreover, to constitute torture, the act "must be specifically intended to inflict severe physical or mental pain or suffering." *Id.* § 1208.18(a)(5).

Where, as here, the Board adopts the rationale of the IJ, we review the IJ's decision. *Rodriguez Galicia v. Gonzales*, 422 F.3d 529, 535 (7th Cir. 2005). "We review the denial of CAT protection under the highly deferential substantial evidence test, which requires us to affirm if the IJ's order is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole,'" *Rashiah v. Ashcroft*, 388 F.3d 1126, 1131 (7th Cir. 2004) (quoting *Ememe v. Ashcroft*, 358 F.3d 446, 451 (7th Cir. 2004)), and permits us to reverse "only if the facts compel the opposite conclusion," *Lozano-Zuniga v. Lynch*, 832 F.3d 822, 826 (7th Cir. 2016) (citing *Tawuo v. Lynch*, 799 F.3d 725, 727 (7th Cir. 2015)). We review questions of law *de novo*, "deferring to the Board's reasonable interpretation set forth in precedential opinions interpreting the statute." *Id.* (citing *Cece v. Holder*, 733 F.3d 662, 668 (7th Cir. 2013)).

Mabuneza only challenges the IJ's conclusion that he failed to show he would be tortured because of his status as a recent deportee who sought asylum abroad. We identify several distinct arguments, all of which are unavailing.

First, Mabuneza argues that the IJ mischaracterized an exhibit he submitted in support of CAT relief. That exhibit is an article from the Migration Policy Institute stating that

> police officers informally described their view of all deportees as having been in "political exile," and one state official told the author that those who had made unfounded asylum declarations abroad would be arrested and imprisoned. In addition to this political dimension, border officers may also suspect forced returnees of having money earned abroad, which can lead to the solicitation of bribes.

Relying on this exhibit, the IJ wrote that Mabuneza "potentially could be identified as a recent deportee upon arriving in the [DRC] and may be detained," but that "detention and interrogation is not torture." According to Mabuneza, the IJ "downplay[ed]" the likelihood that he would be detained as a deportee as well as the nature of that detention. (Pet'r's Br. 14.) But the IJ's finding that Mabuneza "may be detained" but would not necessarily be tortured is supported by the record. The article reports that some deportees "who had made unfounded asylum declarations abroad would be arrested and imprisoned," but Mabuneza fails to explain why he would be one of the deportees who would be imprisoned. The article also says nothing about whether those deportees are tortured once in custody.

Second, Mabuneza argues that the IJ was wrong to rely on *Matter of J-R-G-P-*, 27 I. & N. Dec. 482 (BIA 2018), in finding

that "detention and interrogation is not torture." In that decision, the Board held that torture does not include harm arising from "abusive or squalid conditions" in detention facilities because those conditions do not result from a specific intent to cause severe pain and suffering. *Id.* at 485–86. Mabuneza maintains that this decision is inapplicable because it concerned a lawful detention, which cannot give rise to torture under 8 C.F.R. § 1208.18(a)(3), while the detention Mabuneza would face upon returning to the DRC would be unlawful. But as the government asserts, Mabuneza's argument "misses the point." (Resp't's Br. 26.) The Board's decision in *J-R-G-P-* did not hinge on whether the detention was lawful or unlawful; the Board concluded that the lack of specific intent was what made the CAT claim unsuccessful. 27 I. & N. Dec. at 486. Even if the Migration Policy Institute article established that Mabuneza would be unlawfully detained, he still would have needed to demonstrate that the harm he would suffer rises to the level of torture. The IJ analogized being "detained or extorted" to poor conditions in detention facilities, neither of which rises to the level of torture because neither is specifically intended to cause severe pain and suffering to detainees. Mabuneza does not point to any evidence or legal support for the idea that his detention in the DRC would constitute torture.

Third, Mabuneza argues that the IJ incorrectly found that "the country conditions evidence is insufficient to show gross, flagrant, or mass violations of human rights" in the DRC. He maintains that the same Migration Policy Institute article constitutes evidence of human rights violations and, combined with evidence of past torture he suffered and the lack of evidence that he could relocate to another part of the country, establishes that it was more likely than not that he would be

tortured. *See* 8 C.F.R. § 1208.16(c)(3). Even assuming the article constitutes evidence of human rights violations, however, the IJ's conclusion ultimately turned on Mabuneza's failure to show that he faced a specific risk of torture. Although the IJ acknowledged that Mabuneza was likely granted refugee status because he was targeted as a member of the Tutsi ethnic group, she stated that current country conditions do not involve ethnic tension or violence against Tutsis, so Mabuneza's fear of future torture on this basis is speculative. Thus, Mabuneza's evidence of mass human rights violations could not establish that he himself faced a substantial risk of torture.

Mabuneza takes issue with this conclusion, arguing that he was not required to show an individualized risk of torture if he managed to establish mass human rights violations in the DRC. While acknowledging that "[t]he record demonstrates that there is widespread violence in the [DRC]," the IJ concluded that evidence about generalized violence was insufficient to support a claim that Mabuneza himself would be tortured upon return to the DRC. Mabuneza maintains that the IJ incorrectly relied on *Lozano-Zuniga*, 832 F.3d 822, and *Matter of S-V-*, 22 I. & N. Dec. 1306 (BIA 2000), because "[t]hose cases involved relief requiring nexus to a protected ground, but deferral under the CAT does not require nexus." (Pet'r's Br. 16.) Although Mabuneza is correct that CAT protection does not require him to show a nexus between persecution he experienced and his membership in a social group, as is required to demonstrate eligibility for withholding of removal under the Immigration and Nationality Act, *see Lozano-Zuniga*, 832 F.3d at 827, he still must show that he personally faces a substantial risk of torture. "[E]vidence about generalized violence or danger within a country is not sufficient to make a claim that it is more likely than not that a petitioner would be

tortured upon return to his home country," *id.* at 830–31, absent "evidence that the applicant himself will be targeted," *Rashiah*, 388 F.3d at 1133. Because Mabuneza does not point to any such evidence, we do not disturb the IJ's finding.

In sum, the Board correctly held that the IJ did not make any factual or legal error in finding that Mabuneza did not face a substantial risk of torture as a recent deportee.

*B. Motion to Reconsider*

We review both the decision to assign a case to a single judge and the denial of a motion to reconsider for an abuse of discretion. *Yusev v. Sessions*, 851 F.3d 763, 768 (7th Cir. 2017); *El-Gazawy v. Holder*, 690 F.3d 852, 857 (7th Cir. 2012).

Mabuneza contends that the Board abused its discretion in declining to refer Mabuneza's motion to reconsider to a three-member panel. The Board may refer an appeal to a three-member panel in circumstances where there is a need to settle inconsistencies, establish precedent, ensure compliance with the law, resolve a major controversy, correct clearly erroneous factual findings, reverse the immigration judge, or resolve a complex or novel legal or factual issue. 8 C.F.R. § 1003.1(e)(6). Nonetheless, referral is not required, and the Board's decision not to refer the motion to a three-member panel was not an abuse of discretion. *See Yusev*, 851 F.3d at 768.

Mabuneza also argues that the Board abused its discretion in denying his motion to reconsider. A motion to reconsider must "specify[] the errors of fact or law in the prior Board decision" and "be supported by pertinent authority." 8 C.F.R. § 1003.2(b)(1). "To be within a mile of being granted," the motion "has to give the tribunal to which it is addressed a reason

for changing its mind." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004). It is not a vehicle to raise a legal argument that could have been raised earlier or to reiterate arguments previously considered and rejected. *Matter of O-S-G-*, 24 I. & N. Dec. 56, 58 (BIA 2006).

In his initial brief to the Board, Mabuneza argued that (1) country conditions evidence demonstrated that he would likely be tortured because of his Tutsi ethnicity and his status as a returning asylum seeker; (2) the IJ mischaracterized the Migration Policy Institute article and downplayed the risk that Mabuneza would be tortured as a recent deportee; and (3) Mabuneza did not have the option to relocate in the DRC to avoid torture. In his motion to reconsider, Mabuneza again argued that the IJ mischaracterized the evidence but added that she failed to distinguish between lawful and unlawful sanctions: "[Mabuneza] did not claim that his lawful arrest in squalid conditions would amount to torture, he claimed that he would be unlawfully detained in squalid conditions as punishment for having sought asylum." Mabuneza also maintained that his fears of torture were not considered in the aggregate, including that he would be tortured because of his mental illness. The Board denied his motion to reconsider, stating that Mabuneza "raise[d] issues that were not previously raised," like his aggregation argument and his argument "that he would be subjected to squalid conditions as a form of punishment."

The Board properly exercised its discretion in rejecting Mabuneza's arguments. Because Mabuneza simply "rehash[ed]" his "previous argument" that the immigration judge mischaracterized the evidence, the Board was not required to address it. *See Joshi v. Ashcroft*, 389 F.3d 732, 735 (7th

Cir. 2004). And the Board did not have to consider Mabuneza's aggregation argument, which he concedes he did not raise in his initial appeal. *See O-S-G-*, 24 I. & N. Dec. at 58 ("A motion to reconsider based on a legal argument that could have been raised earlier in the proceedings will be denied."). In an attempt to salvage this argument, Mabuneza asks us to find that he "merely reiterated the adjudicator's obligation under 8 C.F.R. § 1208.16(c)(3) to properly consider the evidence." But the IJ did so, and Mabuneza offers no reason to believe that she did not. Finally, regardless of whether Mabuneza meant to make a "lawful vs. unlawful sanctions" argument or a "squalid conditions" argument, he did not raise either one in his initial brief, and the Board did not have to consider them. In any event, Mabuneza cannot point to an error of fact or law based on the IJ's failure to consider that he would be *unlawfully* detained, because he still fails to show that the harm he would face would rise to the level of torture.

### III. CONCLUSION

For these reasons, we DENY the petitions for review.