In the

# United States Court of Appeals

### For the Seventh Circuit

———————

No. 21-2737

P.A.-V.,

*Petitioner-Appellant*,

*v.*

PAMELA J. BONDI, Attorney General of the United States,

*Defendant-Appellee*.

———————

On Petition for Review of an Order
of the Board of Immigration Appeals.
A000-000-000

———————

ARGUED FEBRUARY 27, 2025 — DECIDED AUGUST 4, 2025

———————

Before ST. EVE, LEE, and MALDONADO, *Circuit Judges*.

MALDONADO, *Circuit Judge*. P.A.-V. is a citizen of Mexico. He first entered the United States in 1995 but was removed in 1998 and again in 1999. He re-entered in 1999 and has remained here since. In 2020, he was arrested for driving under the influence and the Department of Homeland Security reinstated his prior removal order. P.A.-V. applied for protection under the Immigration and Nationality Act and the Convention Against Torture. Like many applicants for withholding

of removal, P.A.-V. fears violence in his home country if he is removed. An immigration judge denied him relief, and the Board of Immigration Appeals affirmed. The standard for granting the relief P.A.-V. seeks is stringent, and we are bound by an extremely deferential standard of review. Because the record before us does not compel a different conclusion, we deny the petition for review.[1]

## I.

When the Department of Homeland Security reinstated P.A.-V.'s removal order in 2020, he applied for withholding of removal under section 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3)(A), and under the CAT, 8 C.F.R. §§ 1208.16–1208.18. An asylum officer conducted a reasonable fear interview of P.A.-V. and concluded that he failed to establish past

---

[1] We provisionally granted P.A.-V.'s motion to proceed using a pseudonym and to keep personally identifying case documents under seal based on his claim that if he is removed to Mexico, identifying information could place him and his family in danger of retaliation. We now grant the motion in full out of an abundance of caution. The "danger of retaliation" is often a "compelling ground" to allow the use of a pseudonym. *See Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004). While we ultimately deny P.A.-V.'s petition under the substantial evidence standard on the record before us, we acknowledge (and the government does not dispute) that P.A.-V. fears drawing attention and violence to himself and his family in Mexico through public court documents that connect his name to the arguments he raises on appeal. *See, e.g.*, *Doe v. Gonzales*, 484 F.3d 445, 446 (7th Cir. 2007) (fear of retaliation in home country sufficient to allow petitioner to litigate with a pseudonym). This fear of retaliatory acts of violence, even if not sufficient to meet the legal standards on this appeal, renders anonymous litigation prudent in this case. Further, the potential harm from disclosure outweighs any potential harm of concealing P.A.-V.'s full name. *Roe v. Dettelbach*, 59 F.4th 255, 259 (7th Cir. 2023).

persecution or a reasonable possibility of future persecution or torture sufficient to withhold removal. P.A.-V. then requested review by an immigration judge who vacated the asylum officer's decision and initiated proceedings to determine if P.A.-V. was entitled to withholding of removal. The IJ held an evidentiary hearing on P.A.-V.'s petition where P.A.-V. appeared remotely and was represented by counsel.

P.A.-V. testified that he feared for his life if he returns to Mexico because of cartel violence linked to his parents' land. That land sits above a gas line that the cartels in the area routinely tap for fuel, a practice referred to by P.A.-V.'s expert as "huachicolero." P.A.-V. recounted several incidents of direct threats and assaults against him and his extended family, which he believes were connected to his parents' property ownership.

For example, before he returned to the United States in 1999, P.A.-V. was in his hometown dining with a friend when a group of armed men came into the restaurant, kicked their table over, and threatened them. He and his friend escaped unscathed, but P.A.-V. believed, without any specific corroboration, that the incident was a warning from the cartel. Fearing for his life, he sought refuge in the United States. Afterwards, his parents began receiving anonymous calls warning that a family member would be kidnapped if they refused to "pay the quota." P.A.-V. did not testify whether his parents paid the money demanded.

In 2012, P.A.-V.'s cousin and her children were kidnapped by cartel members just fifteen minutes from his family's home. They were held for three months until the family could pay the ransom, after which they were released. In 2018, according to P.A.-V., cartel members killed three of his family

members; the sister of his aunt and her son, who also owned land above the pipeline, as well as P.A.-V.'s brother. Since his brother's death, P.A.-V.'s family has not reported any incidents of violence (threatened or actual). But P.A.-V. still fears he will be subject to the same violence if he returns to Mexico.

During the hearing, P.A.-V. presented the expert testimony of Dr. Everard Meade, a professor of Peace Studies at the University of San Diego. Dr. Meade discussed the safety conditions in Mexico and the rising crime rates in P.A.-V.'s hometown, where his parents still reside. Dr. Meade also testified about drug cartels stealing gas from underground pipelines, explaining that this theft and sale of petroleum was becoming a significant source of violence between rival drug cartels. Dr. Meade supported P.A.-V.'s testimony that the violence P.A.-V.'s parents experienced was likely connected to the location of their property in proximity to the gas line.

Dr. Meade then explained the danger P.A.-V. could face if he returns to Mexico. He testified that drug cartels often pay lookouts to pass on information about individuals returning to Mexico from the United States, particularly in areas of high organized crime. Dr. Meade acknowledged that P.A.-V. could safely relocate temporarily but testified that he could not predict whether safe conditions would persist over time.

The IJ issued an oral decision denying P.A.-V.'s application for withholding of removal under both the INA and the CAT. The IJ found P.A.-V.'s testimony credible but concluded that he had not shown past persecution because the evidence failed to establish a direct link between the violence suffered by his family members and any threat to P.A.-V. himself. The IJ further determined that the violence was consistent with the

general uptick in violence in the region. Finally, the IJ concluded that P.A.-V. could safely relocate within Mexico.

P.A.-V. appealed to the Board of Immigration Appeals. The BIA affirmed the IJ's order on the same grounds. P.A.-V. then petitioned this Court for review.

## II.

We review questions of law de novo and findings of fact for substantial evidence. *Lozano-Zuniga v. Lynch*, 832 F.3d 822, 826 (7th Cir. 2016). We will affirm the agency decision if it is supported by reasonable, substantial, and probative evidence. *Id.* "The standard is extremely deferential," and we will not reverse "simply because we would have decided the case differently, but rather only if the facts compel the opposite conclusion." *Id.* "When the Board agrees with the decision of the immigration judge, adopts that decision and supplements that decision with its own reasoning," which the Board did here, this Court reviews "the immigration judge's decision as supplemented by the Board." *Id.* (citation omitted).

### A. P.A.-V.'s Petition for Withholding of Removal

The INA prohibits the removal of an individual "to a country … [where his] life or freedom would be threatened … because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). To demonstrate eligibility for withholding of removal under the INA, an applicant must show a clear probability that his life or freedom will be threatened upon return to his country of origin. *Lozano-Zuniga*, 832 F.3d at 826–27. A clear probability means that it is more likely than not that the applicant will suffer persecution if removed. *Id.* at 827.

If an applicant has demonstrated that he was persecuted in his country of origin, this creates a rebuttable presumption that he has a reasonable fear of future persecution if removed to that country.[2] *Id.* (citing *Zeqiri v. Mukasey*, 529 F.3d 364, 370 (7th Cir. 2008)). If the applicant cannot demonstrate past persecution, the burden remains with him to show that he has a reasonable fear of future persecution. *Lozano-Zuniga*, 832 F.3d at 827.

P. A.-V. seeks withholding of removal based on membership in a social group, his family, and must show that there is a connection between his family and the persecution alleged. *Plaza-Ramirez v. Sessions*, 908 F.3d 282, 286 (7th Cir. 2018). The government does not dispute that P.A.-V.'s membership in his family constitutes membership in a particular social group under the INA. *Gonzales Ruano v. Barr*, 922 F.3d 346, 354 (7th Cir. 2019).

### 1. Past Persecution

We first determine whether P.A.-V. established past persecution, or whether he showed a "nexus between the persecution he experienced and his membership" in his family. *Id.* P.A.-V. contends that the threat he received in the restaurant in 1999 and the violence his family has experienced since constitutes past persecution.

Aside from the restaurant incident, P.A.-V. essentially seeks to assert a theory of derivative persecution: that his

---

[2] Persecution means "the use of *significant* physical force against a person's body," "the infliction of comparable physical harm without direct application of force," or "a credible threat to inflict grave physical harm." *Stanojkova v. Holder*, 645 F.3d 943, 948 (7th Cir. 2011).

family was persecuted "in an effort to persecute him." *Zhou Ji Ni v. Holder*, 635 F.3d 1014, 1018 (7th Cir. 2011) (e.g., if "your child is killed in order to harm you, the fact that you are not touched does not mean that those acts cannot constitute persecution of you." (citation modified)).

While the violence experienced by P.A.-V.'s family is tragic, the IJ did not err in finding that P.A.-V. failed to present evidence that this violence targeted him. Here, the record was insufficient to tie these violent acts to persecution directed at P.A.-V. Take, for instance, the murder of P.A.-V.'s brother. Even assuming the cartel intended to target his brother (rather than another passenger in the car), there is no evidence that the attack was carried out to harm or threaten P.A.-V. Similarly, P.A.-V. did not produce evidence that the kidnapping and murder of his other extended family members were meant to threaten or harm him. As for the threatening incident P.A.-V. experienced at a restaurant nearly fifteen years ago, he presented no evidence regarding the motive or any nexus to his parents' property. In short, P.A.-V. failed to produce sufficient evidence to establish that he suffered past persecution and thus is not entitled to the rebuttable presumption. *Contrast N.L.A. v. Holder*, 744 F.3d 425, 434–42 (7th Cir. 2014) (petitioner granted asylum where evidence showed that her father was kidnapped by gang members and told to relay the message to petitioner that she would be killed if she failed to comply with their demands), *with Zhou Ji Ni*, 635 F.3d at 1018–19 (evidence did not show that petitioner's parents were arrested in an effort to persecute petitioner himself on account of his religion).

P.A.-V. resists this conclusion and argues that remand is necessary because the BIA did not fully consider his evidence

of past persecution. He relies on our decision in *Chen v. Holder*, 604 F.3d 324, 333 (7th Cir. 2010), where the BIA misread circuit precedent in dismissing petitioner's argument. Remand was required there for the BIA to consider the argument in the first instance. *Id.* Here, P.A.-V. seizes on the BIA's description of it being "undisputed" that he did not experience past persecution, arguing that this proves the agency disregarded "the totality of the circumstances" including "whether harm suffered by family members in combination with other factors may constitute past persecution." *Id.* But this case is not like *Chen*. The BIA reasonably relied on the IJ's findings that P. A.-V.'s evidence of past persecution—namely the restaurant incident and the violence his family members have experienced—lacked a nexus to his parents' property and were not meant to target P.A.-V. himself. Substantial evidence supports the IJ's conclusion that P.A.-V. failed to establish past persecution. Remand is not required.

### 2. Future Persecution

For similar reasons, we find that P.A.-V. has not met his burden of establishing that he has a reasonable fear of future persecution if returned to Mexico. *See Lozano-Zuniga*, 832 F.3d at 827. To show a reasonable fear of future persecution, a petitioner "must set forth specific evidence indicating that it would be more likely than not that he would be individually targeted for harm." *Id.* at 828 (citing *Salim v. Holder*, 728 F.3d 718, 722–24 (7th Cir. 2013)). "Fears of generalized harms are not enough." *Id.* (citing *Kobugabe v. Gonzales*, 440 F.3d 900, 902 (7th Cir. 2006)).

P.A.-V. argues that he will be subject to violence if he returns to Mexico because of his membership in his family. The IJ, however, found that P.A.-V. did not establish that the

violence his family experienced was connected to their own-
ership of this land, rather than the increasing crime and vio-
lent trends in the area. We hold that the agency's decision was
supported by substantial evidence. P.A.-V. failed to introduce
specific evidence that he is more likely than not to be targeted
as a member of his family.

### 3. Relocation

P.A.-V. also challenges the agency's finding that he could
reasonably relocate within Mexico. While we need not ad-
dress relocation given our finding that P.A.-V. has not shown
a reasonable fear of future persecution, the evidence nonethe-
less supports the agency's conclusion. Because the alleged
persecutor is not the government, P.A.-V. bears the burden of
establishing, by a preponderance of the evidence, that it
would be unreasonable for him to relocate within Mexico.
8 C.F.R. § 1208.16(b)(3)(i), (iii). To make this determination,
we ask "(1) whether safe relocation is possible, and if so, (2)
whether it would be reasonable to expect the applicant to
safely relocate." *Ndonyi v. Mukasey*, 541 F.3d 702, 712 (7th Cir.
2008).

The IJ concluded that Dr. Meade's testimony that P.A.-V.
could not safely relocate in Mexico in the long-term was in-
sufficient to meet this burden because he only described a fear
of generalized violence throughout Mexico. But P.A.-V. ar-
gues that this conclusion was short-sighted. While the IJ con-
sidered the first question, whether P.A.-V. could safely relo-
cate, he argues that the IJ did not answer the second ques-
tion—whether such relocation would be reasonable. He also
argues that the BIA erred in finding that he could safely relo-
cate "temporarily," because the regulations do not contem-
plate any temporal limitation on safe relocation.

We find that the evidence does not compel a different re-
sult. P.A.-V. bore the burden of proof that relocation was un-
reasonable. Dr. Meade testified about the general country
conditions in Mexico and P.A.-V. did not present any other
evidence establishing that relocation would be unreasonable.
*See Bernard v. Sessions*, 881 F.3d 1042, 1049 (7th Cir. 2018) (find-
ing that testimony about general violence and vague threats
were too speculative to support petitioner's contention that he
could not safely relocate). The agency's determination that
P.A.-V. could reasonably relocate within Mexico was sup-
ported by substantial evidence and P.A.-V. therefore failed to
meet his burden of demonstrating a clear probability of future
persecution.

## B.  P.A.-V.'s Petition for Relief under the CAT

To qualify for relief under the CAT, an applicant must "es-
tablish that it is more likely than not that he or she would be
tortured if removed." *Mabuenza v. Garland*, 16 F.4th 1222, 1225
(7th Cir. 2021) (quoting 8 C.F.R. § 1208.16(c)(2)). Unlike an ap-
plication for withholding of removal under the INA, a CAT
petitioner does not need to show that the torture is because of
any protected grounds, but rather "the torture must be 'in-
flicted by or at the instigation of or with the consent or acqui-
escence of a public official.'" *W.G.A. v. Sessions*, 900 F.3d 957,
968 (7th Cir. 2018) (quoting 8 C.F.R. § 1208.18(a)(1)). Torture
is defined as "any act by which severe pain or suffering,
whether physical or mental, is intentionally inflicted on a per-
son" for the purpose of coercion, punishment, or discrimina-
tion. 8 C.F.R. § 1208.18(a)(1).

Because P.A.-V. has not established a clear probability of
future persecution under the INA, he cannot meet the higher
burden of showing a likelihood of torture required for CAT

relief. *Khan v. Filip*, 554 F.3d 681, 692 (7th Cir. 2009) ("[A] petitioner's failure to show a clear probability of future persecution also means he cannot show a likelihood that he will be tortured."). And contrary to P.A.-V.'s argument, the IJ considered the evidence of violence against his family but reasonably found no sufficient connection among the incidents. Further, as explained above, substantial evidence supports the agency's determination that P.A.-V. could safely relocate within Mexico.

We reach the same conclusion even if we consider the merits of P.A.-V.'s arguments under the CAT on appeal. To determine whether an applicant has met his burden under the CAT, the IJ must address the regulatory factors, including evidence of past torture, ability to relocate within the country, evidence of grave human rights violations, and other relevant country conditions. 8 C.F.R. § 208.16(c)(3)(i)–(iv); *Orellana-Arias v. Sessions*, 865 F.3d 476, 489 (7th Cir. 2017). Here, the IJ looked to these factors and determined that P.A.-V. did not suffer past torture and could relocate safely within Mexico. While the IJ recognized widespread violence and impunity within the country, he concluded this alone did not qualify P.A.-V. for protection under the CAT.

P.A.-V. argues that the agency improperly disregarded evidence relevant to his CAT claim. He specifically challenges the IJ's conclusion that, although his family had been extorted, this evidence was insufficient to support CAT relief. He also argues that he presented evidence showing that the Mexican government has failed to address the huachicolero problem and related violence.

We disagree and conclude that substantial evidence supports the agency's determination. P.A.-V. put forth no

evidence that the Mexican government would consent or ac-
quiesce to any harm that he might experience. *See* 8 C.F.R.
§ 1208.18(a)(1), (7). On his extortion argument, there is actu-
ally no evidence in the record that P.A.-V.'s family paid any
of the extortion money. In addition, Dr. Meade explained that
the government amped up law enforcement efforts directed
specifically at the huachicolero problem. While he questioned
the efficacy of these efforts—and such efforts are not alone
dispositive, *see Herrera-Garcia v. Barr*, 918 F.3d 558, 562 (7th
Cir. 2019)—P.A.-V. submitted no additional evidence beyond
Dr. Meade's broad allegations of government acquiescence.
*See id.* The record therefore does not compel a different con-
clusion.

We conclude that substantial evidence supports the
agency's denial of relief under the CAT. Accordingly, we must
affirm.

*

In sum, the record does not compel a conclusion that P.A.-
V. proved eligibility for withholding of removal under the
INA or protection under the CAT. The petition for review is
DENIED.